## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

Adduci Mastriani & Schaumberg L.L.P.
1200 Seventeenth Street, NW, Fifth Floor
Washington, DC  20036

                                                        Plaintiff,

v.

Lyndol W. Hollingsworth
130 Crows Nest Court
Azle, Texas 76020-4945


and

New Millennium Tools, Inc.
5591 SW Artic Drive
Beaverton, Oregon 97505

and

Charles Minnick
5591 SW Artic Drive
Beaverton, Oregon 97005-4163

                                                        Defendants.

Civil Action No. 1:08-CV-00990-PLF
The Honorable Paul L. Friedman

### AMENDED COMPLAINT

Pursuant to Federal Rule of Civil Procedure 15(a), Plaintiff, ADDUCI MASTRIANI &

SCHAUMBERG LLP, brings this Amended Complaint against Defendants, NEW MILLENIUM

TOOLS, INC., CHARLES MINNICK and LYNDOL W. HOLLINGSWORTH, and complains

as follows:

### Nature of the Action

1.      Plaintiff Adduci Mastriani & Schaumberg LLP ("AMS") brings this civil action

pursuant to 28 U.S.C. § 1332 seeking damages against Defendants, New Millennium Tools, Inc.,

Lyndol W. Hollingsworth and Charles Minnick (collectively "NMT").  This matter arises out of

NMT's breach of contract and deceptive conduct.

**The Parties**

2.      AMS is incorporated under the laws of the District of Columbia and has its principal place of business at 1200 Seventeenth Street, NW, Washington, D.C. 20036.

3.      Upon information and belief, NMT is incorporated under the laws of the State of Oregon and its principal place of business is located at 5591 SW Artic Drive, Beaverton, Oregon 97505.

4.      Upon information and belief, Charles Minnick resides at 5591 SW Arctic Drive, Beaverton, Oregon 97005-4163.

5.      Upon information and belief, Lyndol W. Hollingsworth resides at 1305 Crows Nest Court, Azle, Texas 76020-4945.

**Jurisdiction and Venue**

6.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

7.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(a) and (b) because a substantial part of the events or omissions giving rise to AMS's claims occurred in this District.

**Background**

8.      AMS is engaged in the business of providing legal services to clients for fees agreed upon under the terms of an engagement letter or retainer agreement.

9.      Upon information and belief, NMT is an Oregon corporation that designs, manufactures and sells tools.

10.     On February 22, 2006, NMT, as well as Messrs. Hollingsworth and Minnick in their individual capacities, entered into a Retainer Agreement, attached hereto as Exhibit A, with

AMS, whereby AMS was "to provide representation as counsel in advising on *Tesla Industries, Inc. v. David C. Waldmann, Lyndol W. Hollingsworth, Charles Minnick a/k/a Chuck Minnick, and New Millennium Tools, Inc.*, Case No. C.A. No. 06-55" that took place in the United States District Court for the District of Delaware ("the Delaware Action").

11.     Pursuant to the Retainer Agreement, it was agreed that fees for professional services were to be charged at the firm's normal hourly rate and that NMT would pay all costs incurred in connection with AMS's representation under the Retainer Agreement. *See* Exhibit A. AMS was to send NMT monthly statements indicating hourly attorneys' fees and costs incurred, and the current balance owed, which was to be paid in full within thirty (30) days after the date of statement. *See* Exhibit A.  Interest in the amount of one percent (1%) per month was to be charged on any balance past due more than sixty (60) days. *See* Exhibit  A.

12.     AMS represented NMT throughout the pendency of the Delaware Action until a settlement was reached and the Delaware Action was dismissed as to NMT.

13.     NMT, being a smaller, closely held business, struggled to timely pay AMS in connection with the Delaware Action.  In an effort to bring its outstanding invoices current, NMT promised in writing and orally that it would pay AMS $900 out of the sale proceeds for each LugMaster unit sold. *See* Exhibit B, E-mails from Mr. Minnick to Lou Mastriani.

14.     NMT sold at least 50 units to a foreign client and another 125 units to domestic military installations.  These sales should have provided direct payment to AMS of $157,500 toward the outstanding invoices.  Such payment was never made, but converted by NMT for its own use. *See* Exhibit B.

15.     To date, NMT has failed to pay invoices amounting to $800,004.05 related to services rendered in connection with the Delaware Action.

## Count One
### (Breach of Contract)

16.    Plaintiff AMS re-alleges and incorporates herein by reference Paragraphs 1 through 15 of this Complaint as though fully set forth herein.

17.    The Retainer Agreement between AMS and NMT constitutes a valid and enforceable contract whereby AMS provided legal services in connection with the Delaware Action to NMT and NMT was required to pay for these services according to the terms outlined in the Retainer Agreement.

18.    NMT is in breach of this contract by its refusal to satisfy its obligations to pay AMS for services rendered under the Retainer Agreement.

19.    The agreement between AMS and NMT wherein AMS was to receive $900 for every LugMaster unit sold constitutes a valid and enforceable contract.

20.    NMT is in breach of this contract by its refusal to tender to AMS its share of sales of LugMaster units.

21.    As a direct and proximate result of Defendant NMT's breach of the Retainer Agreement and agreement that AMS was to receive $900 for every unit of LugMaster sold, AMS has suffered and will continue to suffer injury such that AMS is entitled to an award of compensatory and consequential damages, plus costs and interest.

## Count Two
### (Quantum Meruit)

22.    Plaintiff AMS re-alleges and incorporates herein by reference Paragraphs 1 through 21 of this Complaint as though fully set forth herein.

23.    The actions of NMT permitted it to be enriched unjustly, at AMS's expense, through the realization of profits and other benefits, which NMT should be required to disgorge.

4

24.     AMS, by providing services under the Retainer Agreement, conferred a benefit on NMT.

25.     NMT knew of, and accepted, the benefit conferred by AMS through its representation of NMT in the Delaware Action.

26.     AMS has a reasonable expectation of payment and NMT should reasonably be expected to pay for the benefit conferred by AMS through its representation of NMT in the Delaware Action.

27.     Equity and good conscience require that NMT make restitution to AMS.

28.     AMS is entitled to damages in an amount equal to the sums which were to be paid by NMT to AMS for services performed, plus costs and interest.

**Count Three**
**(Fraud)**

29.     Plaintiff AMS re-alleges and incorporates herein by reference Paragraphs 1 through 28 of this Complaint as though fully set forth herein.

30.     NMT falsely represented that it would be able to fully pay for the legal fees and costs associated with the defense of the Delaware action out of the revenues of these sales.

31.     NMT falsely represented to AMS that it had made sales of the LugMaster units and that it had contracts for future sales.  Moreover, NMT falsely represented to AMS that, in order to satisfy the outstanding invoices from AMS, it would pay AMS $900 from the sale of every LugMaster unit.

32.     NMT had knowledge of the falsity of these representations and made them with the intent to deceive AMS into continuing to represent it in the Delaware Action.

33.     AMS continued to represent NMT, rather than withdraw, in reliance upon NMT's series of false representations of material fact.

34.    As NMT's breach of contract assumed the character of a willful tort, AMS is entitled to compensatory and punitive damages in an amount of $3,000,000.00.

**Count Four**
**(Conversion)**

35.    Plaintiff AMS re-alleges and incorporates herein by reference Paragraphs 1 through 34 of this Complaint as though fully set forth herein.

36.    NMT is unlawfully exercising ownership, dominion and control over the personal property of AMS in denial or repudiation of AMS'S property rights.   In particular, NMT has withheld $900 per LugMaster unit sold.

37.    AMS is therefore entitled to damages in an amount equal to the sums which were to be paid by NMT to AMS for services performed, plus costs and interest.

**Prayer for Relief**

WHEREFORE, as a direct and proximate result of the allegations above, AMS has suffered, and will continue to suffer, injury and damages such that judgment should be entered against NMT as follows:

A.    Awarding AMS compensatory damages in the amount of $800,004.05 caused by NMT's breach of the Retainer Agreement;

B.    Awarding AMS $3,000,000.00 in punitive damages for its fraudulent conduct;

C.    Awarding AMS costs and pre-judgment and post-judgment interest; and

D.    Awarding such other and further relief as the Court deems just and proper.

Dated:  June 13, 2008

Respectfully submitted,

Louis S. Mastriani
D.C. Bar No. 386820
Michael L. Doane
D.C. Bar No. 438368
ADDUCI, MASTRIANI & SCHAUMBERG, L.L.P.
1200 Seventeenth Street, N.W., Fifth Floor
Washington, DC 20036
Telephone:  (202) 467-6300
Facsimile:   (202) 466-2006

*Counsel for Plaintiff Adduci Mastriani &
Schaumberg LLP*

7

## DEMAND FOR JURY TRIAL

Plaintiff Adduci Mastriani & Schaumberg LLP hereby demands trial by jury on all counts contained herein.

Dated:  June 13, 2008

Respectfully submitted,

Louis S. Mastriani
D.C. Bar No. 386820
Michael L. Doane
D.C. Bar No. 438368
ADDUCI, MASTRIANI & SCHAUMBERG, L.L.P.
1200 Seventeenth Street, N.W., Fifth Floor
Washington, DC 20036
Telephone:   (202) 467-6300
Facsimile:   (202) 466-2006

*Counsel for Plaintiff Adduci Mastriani &*
*Schaumberg LLP*

NMT700108-2

L Y N D O L   W .   H O L L I N G S W O R T H

*NEMT-001*

---

## FACSIMILE TRANSMITTAL SHEET

| TO: | FROM: |
|---|---|
| Adduci, Mastriani & Schaumberg, LLP | Lyndol W. Hollingsworth |

| COMPANY: | DATE: 2/22/2006 |
|---|---|

| FAX NUMBER: 202-466-2006 | TOTAL NO. OF PAGES INCLUDING COVER: 4 |
|---|---|

| PHONE NUMBER: | SENDER'S REFERENCE NUMBER: |
|---|---|

| RE: Retainer Agreement | YOUR REFERENCE NUMBER: |
|---|---|

☐ URGENT   ☑ FOR REVIEW   ☐ PLEASE COMMENT   ☐ PLEASE REPLY   ☐ PLEASE RECYCLE

---

Attached please find my signed copy of the Retainer Agreement.


Lyndol W. Hollingsworth

Tel. # 512-300-0126



EXHIBIT
A

[CLICK HERE AND TYPE RETURN ADDRESS]

## RETAINER AGREEMENT

This retainer agreement is made between Adduci, Mastriani & Schaumberg, L.L.P. (hereinafter "attorneys" or "firm") and Charles Minnick, New Millennium Tools, Inc. and Lyndol W. Hollingsworth (hereinafter "client") and specifies the terms and conditions under which attorneys shall provide legal representation to client in the above-referenced matter.

Client is retaining attorneys to provide representation as counsel in advising on *Tesla Industries, Inc., v. David C. Waldmann, Lyndol W. Hollingsworth, Charles Minnick a/k/a Chuck Minnick, and New Millennium Tools, Inc.* Case No. C.A. No. 06-55 that is pending before the United States District Court for the District of Delaware.

It is agreed that fees for professional services shall be at the firm's normal hourly rates. Client agrees that attorneys may elect to utilize the firm's professional staff, including associate attorneys and legal assistants to perform services in connection with the representation of client and agrees to pay for such services at the firm's normal hourly rates. Senior partners' hourly rates are $525.00 per hour. Partners' hourly rates range from $325.00 to $475.00 per hour. Rates for associate attorneys range from $175.00 to $300.00 per hour. Legal assistant, law clerk and clerical support rates range from $60.00 to $175.00 per hour.

Client will pay all costs incurred in connection with attorneys' representation of client under this agreement including, but not limited to Delaware local counsel fees, travel and subsistence expenses, photocopying, telecommunications and facsimile, computer analysis, courier costs and secretarial overtime. Costs may be advanced by attorneys and then billed to client. However, attorneys may at their option require that client make advance payment. Client will reimburse attorneys for any costs advanced.

Attorneys will send client monthly statements indicating hourly attorneys' fees and costs incurred and their basis, any amounts applied from deposits, and any current balance owed. Any balance will be paid in full within thirty (30) days after the date of the statement. Interest in the amount of one percent (1%) per month will be charged on any balance past due more than sixty (60) days. Client agrees that if such funds are not paid as provided by herein, attorneys may, for that reason, withdraw from representation of client. Payment of monthly statements may be made by check or via wire transfer to:

# REDACTED

Client may discharge attorneys at any time by written notice effective upon receipt by attorneys. Unless specifically agreed by attorneys and client, attorneys will provide no further services and advance no further costs on client's behalf after receipt of such notice. If upon receipt of such notice, attorneys are client's attorney of record in any proceeding, client will execute and return a substitution of attorney form immediately upon receipt from attorney. Notwithstanding the discharge, client shall remain obligated to pay attorneys the agreed rate for all services provided and to reimburse attorneys for all costs advanced before the discharge.

Attorneys may withdraw for any of the reasons specified in the Rules of Professional Conduct of the District of Columbia. Notwithstanding attorneys' withdrawal, client shall remain obligated to pay attorneys the agreed rate for all services provided and to reimburse attorneys for all costs advanced before the discharge.

Although attorneys may offer an opinion about possible results regarding the subject matter of this agreement, attorneys cannot guarantee any particular result. Client acknowledges

that attorneys have made no promises about the outcome and that any opinion offered by attorneys in the future will not constitute a guaranty.

This agreement contains the entire agreement of attorneys and client. No other agreement, statement or promise made on or before the effective date of this agreement will be binding on either attorneys or client.

The prevailing party in any action or proceeding to interpret, declare or enforce any provision of this agreement will be entitled to reasonable attorneys' fees and costs incurred in that action or proceeding.

This agreement shall be subject to the laws of the District of Columbia.

The foregoing is agreed to by Charles Minnick, New Millennium Tools, Inc. and Lyndol W. Hollingsworth.

Dated: Feb. 22 , 2006, _____ _____

By: _Lyndol W. Hollingsworth_

NMT500006.DOC

3



# RETAINER AGREEMENT

This retainer agreement is made between Adduci, Mastriani & Schaumberg, L.L.P. (hereinafter "attorneys" or "firm") and Charles Minnick, New Millennium Tools, Inc. and Lyndol W. Hollingsworth (hereinafter "client") and specifies the terms and conditions under which attorneys shall provide legal representation to client in the above-referenced matter.

Client is retaining attorneys to provide representation as counsel in advising on *Tesla Industries, Inc., v. David C. Waldmann, Lyndol W. Hollingsworth, Charles Minnick a/k/a Chuck Minnick, and New Millennium Tools, Inc.* Case No. C.A. No. 06-55 that is pending before the United States District Court for the District of Delaware.

It is agreed that fees for professional services shall be at the firm's normal hourly rates. Client agrees that attorneys may elect to utilize the firm's professional staff, including associate attorneys and legal assistants to perform services in connection with the representation of client and agrees to pay for such services at the firm's normal hourly rates. Senior partners' hourly rates are $525.00 per hour. Partners' hourly rates range from $325.00 to $475.00 per hour. Rates for associate attorneys range from $175.00 to $300.00 per hour. Legal assistant, law clerk and clerical support rates range from $60.00 to $175.00 per hour.

Client will pay all costs incurred in connection with attorneys' representation of client under this agreement including, but not limited to Delaware local counsel fees, travel and subsistence expenses, photocopying, telecommunications and facsimile, computer analysis, courier costs and secretarial overtime. Costs may be advanced by attorneys and then billed to client. However, attorneys may at their option require that client make advance payment. Client will reimburse attorneys for any costs advanced.

Attorneys will send client monthly statements indicating hourly attorneys' fees and costs incurred and their basis, any amounts applied from deposits, and any current balance owed. Any balance will be paid in full within thirty (30) days after the date of the statement. Interest in the amount of one percent (1%) per month will be charged on any balance past due more than sixty (60) days. Client agrees that if such funds are not paid as provided by herein, attorneys may, for that reason, withdraw from representation of client. Payment of monthly statements may be made by check or via wire transfer to:

# REDACTED

Client may discharge attorneys at any time by written notice effective upon receipt by attorneys. Unless specifically agreed by attorneys and client, attorneys will provide no further services and advance no further costs on client's behalf after receipt of such notice. If upon receipt of such notice, attorneys are client's attorney of record in any proceeding, client will execute and return a substitution of attorney form immediately upon receipt from attorney. Notwithstanding the discharge, client shall remain obligated to pay attorneys the agreed rate for all services provided and to reimburse attorneys for all costs advanced before the discharge.

Attorneys may withdraw for any of the reasons specified in the Rules of Professional Conduct of the District of Columbia. Notwithstanding attorneys' withdrawal, client shall remain obligated to pay attorneys the agreed rate for all services provided and to reimburse attorneys for all costs advanced before the discharge.

Although attorneys may offer an opinion about possible results regarding the subject matter of this agreement, attorneys cannot guarantee any particular result. Client acknowledges

that attorneys have made no promises about the outcome and that any opinion offered by attorneys in the future will not constitute a guaranty.

This agreement contains the entire agreement of attorneys and client. No other agreement, statement or promise made on or before the effective date of this agreement will be binding on either attorneys or client.

The prevailing party in any action or proceeding to interpret, declare or enforce any provision of this agreement will be entitled to reasonable attorneys' fees and costs incurred in that action or proceeding.

This agreement shall be subject to the laws of the District of Columbia.

The foregoing is agreed to by Charles Minnick, New Millennium Tools, Inc. and Lyndol W. Hollingsworth.

Dated: _3/23/_____, 2006, *Charles Minnick*

By: _____

NMT500006.DOC

3

that attorneys have made no promises about the outcome and that any opinion offered by attorneys in the future will not constitute a guaranty.

This agreement contains the entire agreement of attorneys and client. No other agreement, statement or promise made on or before the effective date of this agreement will be binding on either attorneys or client.

The prevailing party in any action or proceeding to interpret, declare or enforce any provision of this agreement will be entitled to reasonable attorneys' fees and costs incurred in that action or proceeding.

This agreement shall be subject to the laws of the District of Columbia.

The foregoing is agreed to by Charles Minnick, New Millennium Tools, Inc. and Lyndol W. Hollingsworth.


Dated: 2/22 , 2006, New Millennium Tools, Inc.

By: Charles Minnick, Pres.

NMT500006.DOC

3

**Ian Taronji**

| | |
|---|---|
| **From:** | Lou Mastriani |
| **Sent:** | Tuesday, April 29, 2008 10:08 AM |
| **To:** | Ian Taronji |
| **Subject:** | FW: Shipments and payments |

-----Original Message-----

| | |
|---|---|
| **From:** | Lou Mastriani |
| **Sent:** | Thursday, January 10, 2008 1:58 PM |
| **To:** | 'CHAZMIN@aol.com' |
| **Subject:** | FW: Shipments and payments |

Here is further confirmation, Chuck.

-----Original Message-----

| | |
|---|---|
| **From:** | Lou Mastriani |
| **Sent:** | Thursday, September 06, 2007 2:15 PM |
| **To:** | Charles Minnick (E-mail) |
| **Cc:** | Jim Adduci; Tom Schaumberg |
| **Subject:** | Shipments and payments |

Chuck:

This is to follow up on and confirm the substance of our telephone discussion today.

You have shipped 50 units to South Africa, which, at the agreed upon $900 per unit, will net us $45,000 that will be wired to our account before October 1. Another 125 units will have been shipped to domestic military installations later this month, and payment will be received by NMT by the third week of October, whereupon $112,500 will be immediately wired to us. You also said that another 400 units will be shipped in October, which will result in another payment to us of $360,000 in November. You also assured me that, in view of orders for another 3,000 units, the purchase orders for which will be received shortly, you expect the balance of the amount owed to our firm, as well as Delaware local counsel, will be fully paid off by no later than the end of the year.

Please contact me immediately if any other developments arise that affect this schedule and the commitment to pay off the balance owed by no later than the end of the year.

Regards,
Lou

Louis S. Mastriani
ADDUCI MASTRIANI & SCHAUMBERG LLP
1200 Seventeenth Street, NW, Washington DC 20036
Tel: 202 467 6300  Fax: 202 466 2006  Web: **www.adduci.com**

This electronic message and attachments, if any, are intended only for the individual or entity named above (or those properly entitled to access the information) and may contain information that is privileged, confidential, attorney-work product or otherwise exempt from disclosure under applicable law. If the reader of this transmission is not the intended or an authorized recipient, you are hereby notified that any unauthorized distribution, dissemination, or copying of this transmission and the attachments, if any, is prohibited. If you have received this transmission in error, please immediately notify us by collect call (202) 467-6300, by facsimile (202) 466-2006, or by electronic mail ams@adduci.com.



EXHIBIT
B

**Ian Taronji**

**From:**    Lou Mastriani
**Sent:**    Tuesday, April 29, 2008 10:08 AM
**To:**      Ian Taronji
**Subject:** FW: $$

-----Original Message-----
**From:** Lou Mastriani
**Sent:** Thursday, January 10, 2008 1:58 PM
**To:** 'CHAZMIN@aol.com'
**Subject:** FW: $$

Chuck:

In response to your email please see below and the next email from me. The agreed upon terms were $900 per unit shipped.

The Retainer agreements signed by you and NMT, and that with Lynn Hollingsworth will be sent as a third email.

Please sign and return the agreement today.

Regards,
Lou
-----Original Message-----
**From:** CHAZMIN@aol.com [mailto:CHAZMIN@aol.com]
**Sent:** Monday, June 04, 2007 12:27 PM
**To:** Lou Mastriani
**Subject:** Re: $$

Lou,

We will be shipping 50 units to S. Africa this week, ($45,000 to you), still awaiting final paper work for the other 150 units, ($135,000 to you), by the 15th.

Not what I had hoped, but the best for right now.

Best regards,

Chuck

See what's free at AOL.com.